# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **SUZANNE MARGARET BASSO,** | § | |
| **Petitioner** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. H-07-3047** |
| | § | |
| **NATHANIEL QUARTERMAN,** | § | **DEATH PENALTY CASE** |
| **Director, Texas Department of** | § | |
| **Criminal Justice, Correctional** | § | |
| **Institutions Division, Respondent** | § | |

## PETITIONER'S MOTION FOR NEW TRIAL AND
## <u>MOTION FOR CERTIFICATE OF APPEALABILITY</u>

Winston E. Cochran, Jr.
Attorney at Law
Texas Bar No. 04457300
SD Texas No. 14490
P.O. Box 38465
Houston, TX 77238-8465
Tel. (713) 228-0264

Counsel for Petitioner

## **TABLE OF CONTENTS**

Table of Authorities                                                                 iii

Statement of the Case                                                            1

    A.  Procedural History                                               1

    B.  Factual Background                                             2

Reasons for a New Trial                                                         3

Argument and Authorities                                                      4

    1.   The Court erred in holding that there was no evidentiary issue
which would justify a hearing.                                               4

    2.   The Court erred in holding Basso responsible for not informing
her attorneys about the administration of medication which impaired
her during trial.                                                                     7

    3.   The Court erred in relying upon the trial lawyers' claims that they
would not have used particular mitigation evidence because of the
possible negative effects as a reason for not finding that counsel was
ineffective.                                                                             9

    4.   The Court erred in relying upon the trial lawyers' claims that they
would not have used particular mitigation evidence because of the
possible negative effects as a reason for finding the trial court's denial
of mitigation funding to be harmless.                              14

    5.   The Court erred in treating the denial of a request for a definition
by a confused juror as equivalent to the lack of any definition given
to jurors who presumably are not confused.                  15

    6.   The Court erred in mischaracterizing Basso's "power of one"
argument as a "10-12 rule" argument.                           16

Reasons for Granting a Certificate of Appealability                17

i

Conclusion                                    19

Certificate of Service                        19

Proposed Order                                20

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348,
    147 L.Ed.2d 435 (2000)                                      18

*Basso v. State*, No. 73,672 (Tex. Crim. App. 2003)
    (2003WL1702283)                                             2

*Basso v. Texas*, 540 U.S. 864, 124 S.Ct. 174, 157 L.Ed.2d 116 (2003)       2

*Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)       5

*Ex parte Duffy*, 607 S.W.2d 507 (Tex. Crim. App. 1980)                    10

*Martinez v. Johnson*, 255 F.3d 229(5th Cir. 2001)                          4

*Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)   17

*Riggins v. Nevada*, 504 U.S. 127, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992)  8-9, 18

*Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)   17

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052,
    80 L.Ed.2d 674 (1984)                                       9

*Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)     8, 16

*Walbey v. Quarterman*, __ Fed.Appx. __ (5th Cir. No. 08-70007,
    January 19, 2009)                                    10-12, 15, 18

*Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527,
    156 L.Ed.2d 471 (2003)                                     10-12

*Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495,
    146 L.Ed.2d 389 (2000)                                       10

## **Constitutional Provisions, Statutes and Rules**

28 U.S.C. §2253                                                                17

28 U.S.C. §2254                                                          2, 8, 12

 Fed. R. Civ. Proc. 6(a)(2)                                                      2

Fed. R. Civ. Proc. 6(a)(3)                                                      2

Fed. R. Civ. Proc. 59                                                          1-2

TEX. CODE CRIM. PROC. Art. 11.071                                              2

TEX. CODE CRIM. PROC. Art. 37.071, §2(f)                                       17

TEX. CODE CRIM. PROC. Art. 37.071, §2(g)                                       16

U.S. CONST. Amend. VI                                                           9

U.S. CONST. Amend. VIII                                                        16

**TO THE HONORABLE COURT:**

COMES NOW the petitioner, Suzanne Margaret Basso (also known as Susan Margaret Basso) (hereinafter "Basso"), and respectfully requests that this Court grant a new trial in this cause, pursuant to Fed. R. Civ. Proc. 59, and order an evidentiary hearing pursuant to that order.  Basso further requests that this Court authorize a certificate of appealability.

<u>**STATEMENT OF THE CASE**</u>

**A.  Procedural History**

Basso was indicted for Capital Murder in Cause Number 816855 in the 232nd District Court of Harris County, Texas.  It was specifically alleged that Basso killed Louis Musso in the course of a kidnaping, and that Basso killed Musso for the purpose of financial gain through an inheritance (CR I-2).[1] A jury found Basso guilty as charged. The jury subsequently answered special issues submitted under TEX. CODE CRIM. PROC. Art. 37.07, §2 adversely to Basso, requiring the trial court judge to assess the death penalty. Judgment was entered on September 1, 1999. Basso filed a motion for new trial, which was denied after an evidentiary hearing.

Appeal to the Texas Court of Criminal Appeals was automatic.  Basso raised twenty-five issues on appeal. Basso's conviction was affirmed in an unpublished

---

[1]  In this motion citations to the record are as follows: "CR" is the clerk's record of state district court documents, which contains multiple volumes designated as "I through I-E." References to this Court Memorandum Opinion and Order of January 26, 2009 are designated "Mem. Opin." with page number.

opinion on January 15, 2003. *Basso v. State*, No. 73,672 (Tex. Crim. App. 2003)(2003WL1702283). The United States denied a writ of certiorari on October 6, 2003. *Basso v. Texas*, 540 U.S. 864, 124 S.Ct. 174, 157 L.Ed.2d 116 (2003).

Basso filed a postconviction writ application under TEX. CODE CRIM. PROC. Art. 11.071 on September 12, 2001. The district court recommended that relief be denied, and the state writ application was denied on September 20, 2006. Basso filed a suggestion of reconsideration on the Court's own motion, which also was denied.

On September 20, 2007 Basso filed an application under 28 U.S.C. §2254. On February 21, 2008 Basso filed a memorandum of law in support of the application. On July 7, 2008 the respondent filed a motion for summary judgment as to all of the claims raised. Basso filed a reply to that motion and motion for summary judgment in her favor on October 20, 2008.

On January 26, 2009 this Court granted summary judgment for the respondent on all issues (which necessarily denied summary judgment for Basso). The Court also denied a certificate of appealability. A motion for new trial under Rule 59 is timely if filed by Monday, February 9, 2009, under Fed. R. Civ. Proc. 6(a)(2) and 6(a)(3).

## B.  Factual Background

Regarding the charged offense, Basso adopts the factual discussion set out in the Court of Criminal Appeals' opinion (2003 WL 1702283), in the prior briefing,

2

and in this Court's Memorandum Opinion and Order, although Basso disputes certain factual characterizations in the Memorandum Opinion and Order.

## <u>REASONS FOR A NEW TRIAL</u>

A new trial should be granted for the following reasons:

1.   The Court erred in holding that there was no evidentiary issue which would justify a hearing.

2.   The Court erred in holding Basso responsible for not informing her attorneys about the administration of medication which impaired her during trial.

3.   The Court erred in relying upon the trial lawyers' claims that they would not have used particular mitigation evidence because of the possible negative effects as a reason for not finding that counsel was ineffective.

4.   The Court erred in relying upon the trial lawyers' claims that they would not have used particular mitigation evidence because of the possible negative effects as a reason for finding the trial court's denial of mitigation funding to be harmless.

5.   The Court erred in treating the denial of a request for a definition by a confused juror as equivalent to the lack of any definition given to jurors who presumably are not confused.

6.   The Court erred in mischaracterizing Basso's "power of one" argument as a "10-12 rule" argument.

## ARGUMENT AND AUTHORITIES

### I.

### The Court erred in holding that there was no evidentiary issue would justify a hearing.

The Court held that no hearing needed to be conducted because "Basso has not demonstrated any factual dispute that would entitle her to relief" (Mem. Opin., p. 38). The standard for summary judgment, however, focuses on whether there is a "genuine *issue* as to any material fact." *Martinez v. Johnson*, 255 F.3d 229, 237 (5th Cir. 2001)(emphasis added).[2]  The existence of an "issue" does not always depend on two diametrically opposed stories from different witnesses. As illustrated by this cause, what a witness says in a self-serving affidavit may be contradicted by other facts, and a hearing can serve the purpose of clarifying the conflict.

The most obvious area where clarification is needed is the patent conflict between the defense attorneys' words, after-the-fact, and their pretrial action of seeking a court-funded mitigation expert. What exactly would have been the purpose of the mitigation expert if not to develop the same types of evidence which were revealed in the habeas application?  An important and legitimate purpose of a hearing would be to allow questioning of the attorneys to see how they would answer that,

---

[2]  The two Supreme Court cases cited by the Court, Mem. Opin. p. 12, do support a deferential approach but do not specifically address summary judgments.

since the state habeas court resisted Basso's request for a hearing and allowed the attorneys to hide behind affidavits which did not answer that question.[3]

Another purpose of a hearing would be to see how the attorneys could regard *all* of the mitigating factors (since they presented none of them) as being "two-edged," which was the proffered justification. A lot of the evidence which they failed to investigate (let alone present) had nothing to do with being "a malingerer and a pathological liar" – the feared downside mentioned by the state habeas court and this Court. Mem. Opin., p. 27.  Another question would seek an explanation from Leitner as to how mitigating evidence, presented at the punishment stage of trial, could "strengthen the jury's conviction that Basso and O'Malley did, in fact, inflict such abuse on Musso." Mem. Opin., p. 27.  The crime against Musso would have had to be proved beyond a reasonable doubt at the guilt stage, which comes first.  Yet another question would be to see what master strategy on the "future dangerousness" issue had to be protected against encroachment by "two-edged" mitigation evidence. No such strategy emerges from the trial record.

Yet another question would be why the attorneys would consult only one family member, and no one outside the family, such as the people in the Schenectady

---

[3]   *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974) observed that cross-examination "is the principal means by which the believability of a witness and the truth of his testimony are tested."

courts and schools who readily helped habeas counsel.[4]  This is not explained in the affidavits.  Even if the attorneys could "strategically" assume that Basso's sister, Carol LeRoy, spoke for everyone in the family (although she does not), how could contact with LeRoy be a substitute for inspection of school and court records? LeRoy's affidavit filed in this Court, bearing LeRoy's present name of Carol Ann LeRoy- St. Hillaire, indicates that LeRoy did not know about any existing school or court records.

The short of it is that the lawyers' affidavits are so questionable on their face, and leave so many relevant questions unanswered, that there is a valid factual issue whether all of the background mitigating evidence really would have been ruled out if the attorneys had gone about their investigation in the systematic way dictated by Supreme Court case law and by American Bar Association guidelines.

The Court also is incorrect in another respect, in that LeRoy's affidavit, filed as summary-judgment evidence for Basso, is inconsistent in a major respect with what Leitner's affidavit claimed.  LeRoy states that Leitner had asked her to be available as a mitigation witness, but she was not brought to Texas.  After the trial was over, Leitner claimed a lack of resources, *i.e.* a travel allocation of only $450, as the reason why she was not brought to Texas to testify about mitigating circumstances (LeRoy -

---

[4] The state habeas finding that the attorneys interviewed Basso's "family" was completely inaccurate as to every family member who gave a habeas affidavit except LeRoy.  The other affidavits included statements that those family members were not contacted.

St. Hillaire Affid. appended to Reply to Summary Judgment, p 1). That is a very different story from what was in Leitner's affidavit, and it is important.  Furthermore, the affidavit indicates that LeRoy told Leitner about other relatives who would know about childhood abuse.  Yet Leitner did not mention talking to any of them.  Was he confused?  If so, what other things did he misunderstand?   Recall too that Leitner has claimed that he relied on a letter from LeRoy which, to this very day, has never been produced.

Finally, this Court's analysis of the medication issue has raised a factual question which cannot be answered adequately on the existing record, and was not answered by any finding in the state  habeas court: Did Basso know the effect the medication would have on her?  If not, then the Court's analysis of that issue rests on a faulty premise.

## II.

### The Court erred in holding Basso responsible for not informing her attorneys about the administration of medication which impaired her during trial.

Basso's first, second, and third claims presented related constitutional claims concerning the medication of Basso during trial without the knowledge of her defense attorneys.  The Court rejected these claims under the rationale that Basso was not forced to take this medication against her will, and it was within her power to have informed her attorneys about the medication. Mem. Opin., p. 14. The Court's holding

7

underestimates both (1) the effect of the medication and (2) the right of a defendant to rely on counsel, rather than relying on self-help.

First, a defendant who has been medicated into a stupor should not be expected to have clear thinking. The Court points out that Basso "knew that she was taking the medicine," Mem. Opin., p. 14, but the Court then goes on to presume that Basso would (1) understand that she was falling below the level of mental alertness needed to cooperate with counsel, and (2) further understand that the medication was the cause. The record actually does not show whether Basso recognized and appreciated those facts. Rather than granting summary judgment, this Court should conduct an evidentiary hearing.

Second, the question of who is to blame shifts the focus away from where it needs to be – the effect on the defense. Basso was entitled to have an effective defense, and her impaired condition undercut her attorney's ability to provide that. If the harm lies in the medication's effect on Basso's alertness in court, what difference does it make whose fault it was that counsel was kept ignorant of it?

The Court further reasons that Basso's claim also would be barred by *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) and the statutory counterpart of *Teague* in 28 U.S.C. §2254. There should be no *Teague* bar, however, because Basso's position is merely an application of *Riggins v. Nevada*, 504 U.S. 127, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992). This is because the harm in *Riggins* did not

arise from the fact that medication was forced upon Riggins, but rather from the impact of the medication on Riggins' defense.

## III.

**The Court erred in relying upon the trial lawyers' claims that they would not have used particular mitigation evidence because of the possible negative effects as a reason for not finding that counsel was ineffective.**

The tenth claim concerns ineffective assistance of counsel under U.S. CONST. Amend. VI, as construed in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The respondent's position and this Court's analysis of Basso's tenth claim both rest on the idea that a "strategic" decision was made by attorneys James Leitner and John Donahue to eschew the use of mitigating evidence from Basso's childhood because it might have a "two-edged" effect of working against Basso. Whether that "strategic" claim is genuine ought to be questioned, for as mentioned earlier, it is fundamentally at odds with the request for mitigation assistance. It is all too easy for attorneys to act in their own self-interest and retroactively claim such a "strategy" rather than be embarrassed (and possibly deprived of future lucrative capital cases) due to being found ineffective. A hearing where cross-examination was available is apt to shed a very different light on the claim of strategy.

If, on the other hand, the attorneys' affidavits are taken at face value, then they

reveal the fallacy of putting the "cart" (the strategic decision) before the "horse" (a mitigation investigation). Supreme Court case law calls for exactly the opposite approach. In *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct.. 1495, 146 L.Ed.2d 389 (2000) and *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), the Supreme Court recognized that effective representation in a death-penalty case necessarily included a thorough investigation of mitigating evidence. In *Wiggins* the Court specifically found that a decision to not conduct a complete mitigation investigation was unreasonable, citing American Bar Association guidelines calling for "efforts to discover *all reasonably available* mitigating evidence ..." *Wiggins*, 123 S.Ct. at 2537 (emphasis in *Wiggins*). Texas lawyers had been reminded of this almost twenty years before Basso's trial in *Ex parte Duffy*, 607 S.W.2d 507, 520 (Tex. Crim. App. 1980), a death-penalty decision which stated that "it may not be argued that a given course of conduct was within the realm of trial strategy unless and until the trial attorney has conducted the necessary legal and factual investigation which would enable him to make an informed, rational decision."

The way this Court should have approached this issue is illustrated in a very recent Fifth Circuit decision, *Walbey v. Quarterman*, __ Fed.Appx. __ (5th Cir. No. 08-70007, January 19, 2009).[5]   Walbey, unlike Basso, was given the benefit of an

_____

[5]  *Walbey* was not designated for publication and therefore is not legal precedent, but the procedures and reasoning of *Walbey* certainly can be studied to see how a very similar situation was handled.

evidentiary hearing, where trial counsel's claim of "strategy" could be explored. Walbey's counsel, like Basso's, claimed that a limited mitigation investigation was based on a strategic judgment. Drawing upon *Wiggins*, the Fifth Circuit stated that the focus must be "on whether the investigation supporting counsel's decision not to introduce mitigating evidence ... was itself reasonable." *Walbey*, pp. 9-10.

Walbey's attorney did not interview Walbey's mother or people who worked with Walbey as a child, and he did not hire a mitigation expert. *Walbey*, p. 11. He did, however, put on testimony by Walbey's grandmother and foster parents. *Walbey*, p. 14. That puts Walbey's attorney two interviews ahead of Basso's lawyers, who only talked to LeRoy. Like Walbey's attorney, Basso's lawyers did not talk to any potential witness outside the family and they did not get the aid of a mitigation expert. Furthermore, Walbey's attorney at least "skimmed" some documentary evidence relevant to mitigation which was provided by the district attorney, while Basso's counsel made no effort to obtain the ample documentary evidence available in Schenectady. The Fifth Circuit observed that the "mere possession" by Walbey's attorney "of some information with respect to [Walbey's] background ... did not put him in a position to make a tactical choice not to present a mitigation defense." *Walbey*, p. 11. The same is true here. The performance by Walbey's attorney and by Basso's attorneys were both pathetically inadequate. The difference lies in the willingness of courts to accept a "strategy" excuse.

Walbey's attorney claimed a strategy of focusing on future dangerousness. *Walbey*, p. 12. It was within the proper scope of Section 2254 review to examine whether that strategy claim could justify the failure to investigate. Given the ability of the State, under Texas law, to prove future dangerousness with just the facts of the charged crime, the Fifth Circuit treated that justification as the equivalent of an "erroneous legal conclusion" by counsel. *Walbey*, p. 12. A focus on the future dangerousness issue is a dubious justification for not conducting an adequate mitigation investigation. The situation here is even worse than that, however, because Leitner did not even specify the "future dangerousness" issue as a concern. The main concern expressed by defense counsel in the affidavits was the risk of showing that Basso frequently lied as a child and teenager. The suggestion that evidence of lying thirty years earlier would lead the jury to think Basso posed a future danger of violence in prison is ludicrous.

The Court's opinion also ignored the fact that the mitigation special issue does not even come up for consideration unless there is a finding against a defendant on future dangerousness. Any marginal disadvantage on the first issue through evidence that Basso lied as a child would be more than offset if even one juror was turned from the death penalty by mitigating evidence. How could counsel possibly reach a contrary conclusion without even knowing the full scope of the mitigating evidence? After *Wiggins* it is no answer to say that Leitner had a general sense of the mitigating

12

issues from talking to LeRoy. *Specific evidence* is what is presented to a jury and what must be investigated. There is no denying that Basso's attorneys had not investigated most of the mitigating evidence.

Basso would add a few smaller complaints. The first concerns the Court's assertion that the record shows that counsel knew "the broad facts" about the mitigating themes not presented. Mem. Opin., pp. 28-29. The record actually is very unclear as to what mitigating themes Leitner learned about, but it would not have been unclear if Basso had been given a state habeas hearing. Moreover, a jury gets to hear specific evidence, not "broad facts," so if counsel knew the mitigating themes, that would make the failure to investigate even more reprehensible.

The Court also underestimates the significance of some the mitigating evidence. For example, this Court characterized Basso's family as a "low-middle income" family, Mem. Opin., p.25, yet that only became the case after Basso's mother married Herbert Brooks. Before that Basso's family was mired in poverty. Does the Court think a "lower middle" income family would live in a tenement where the winter wind would literally lift up the flooring, or one infested with rats, as Florence Hotaling stated in her affidavit? The small economic step up which occurred when Herbert Brooks entered the picture came with an awful price of physical and sexual abuse within the family. The Court did acknowledge that the weight of sociological research indicates that the conditions of Basso's childhood would be mitigating, but what

13

seems to be missing is the recognition that an average juror could find this combination of poverty, physical abuse, sexual abuse, and personality problems to be mitigating.

Finally, young Basso's kindness to a retarded child deserves more than a passing mention. Mem. Opin., p. 26. If the evil to be avoided, according to Leitner, was evidence reinforcing the idea that Basso had a predatory attitude toward a retarded person, then the failure to conduct an investigation which would reveal this evidence was significant.

## IV.

**The Court erred in relying upon the trial lawyers' claims that they would not have used particular mitigation evidence because of the possible negative effects as a reason for finding the trial court's denial of mitigation funding to be harmless.**

As an alternative to blaming defense counsel for a failure to investigate, Basso argued in her eleventh claim that the trial court erred in refusing the request for funding of a mitigation expert.  The Court dispatched this claim by reasoning, based on the attorneys' affidavits, that counsel would not have used whatever mitigation theme might be developed through this expert. There are several flaws in that analysis.

First, the attorneys' affidavits did not actually say that they would not have used whatever the mitigation expert might have produced.  The Court assumes that to be the case, which is particularly inappropriate in a summary-judgment context.

14

Second, the conclusion that the attorneys would not have used whatever the expert would have developed cannot be squared with the fact that the attorneys asked for funds for a mitigation expert. Does the Court think the request for expert assistance was made in bad faith? If the Court thinks that, why give any credence to the attorneys' affidavits?

Third, part of the basis for finding ineffectiveness in *Walbey* was the failure to retain a mitigation expert until a week before trial. *Walbey*, p. 4.  If getting expert assistance too late is constitutionally ineffective on the part of counsel, then denying a request for funding such an expert must be comparable error on the trial court's part. As explained in earlier pleadings, Basso thinks an expert would have been able to obtain and assimilate a lot of the information later found by habeas counsel if the expert had really hustled.

## V.

### The Court erred in treating the denial of a request for a definition by a confused juror as equivalent to the lack of any definition given to jurors who presumably are not confused.

The eighteenth claim concerns the trial court's refusal to provide a requested definition for the term "criminal acts of violence."  A finding of the probability that Basso would commit such acts in the future was a prerequisite to assessment of the death penalty.  Everyone agrees that Texas and Fifth Circuit case law has upheld the failure to provide a definition when no juror has asked for such a definition. This

15

situation is different.

The existing cases presuppose that the phrase has a commonly understood meaning and that the jurors all understand that meaning. Assuming such to be the case, then the statutory requirement will be properly applied, and the determination of the special issue is reliable. Here, however, the record affirmatively demonstrates that at least one juror did not understand what the phrase meant. Otherwise there would have been no jury note. When the presumption that the term is understood fails, then the level of reliability required by U.S. CONST. Amend. VIII for a death penalty case is compromised.

The only real question should be whether there is a *Teague* bar. Basso says no, because it is merely an extension of existing doctrine – the "other side of the coin" – to hold that a requested definition must be given because the ordinary presumption of juror understanding does not apply.

## VI.

### The Court erred in mischaracterizing Basso's "power of one" arguments as "10-12 rule" arguments.

Basso's nineteenth, twentieth, and twenty-first claims concerned the failure of the trial court to advise the jury that each member of the jury has the power to prevent the death penalty by simply not voting in a way that would lead to the death penalty. TEX. CODE CRIM. PROC. Art. 37.071, §2(g). Basso has referred to this as the

16

"power of one" principle.  The Court instead characterized the argument as pertaining to the "10-12 rule," which is a different provision of the statute which concerns the numbers required for reaching a verdict.  See TEX. CODE CRIM. PROC. Art. 37.071, §2(f).  Basso acknowledges that Texas case law is against her, and that  may give the respondent an edge in arguing whether a constitutional principle is "clearly established," but Basso at least deserves to have her actual arguments considered.

## REASONS FOR GRANTING A CERTIFICATE OF APPEALABILITY

The issuance of a certificate of appealability for review of a district court's judgment is governed by 28 U.S.C. §2253. The Supreme Court explained in *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) that Section 2253 permits the issuance of a COA where an applicant has made a "substantial showing" of the denial of a constitutional right. This means Basso must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further." *Id*. at 336, 123 S.Ct. at 1039, quoting from *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). *Miller-El* and *Slack* further emphasized that "a COA does not require a showing that the appeal will succeed." 537 U.S. at 337, 123 S.Ct. at 1039. "Accordingly," *Miller-El* added, "a court of appeals should not decline the application for a COA merely

because it believes the applicant will not demonstrate an entitlement to relief." *Id*.

Under the foregoing standards, Basso should be granted a certificate as to the first, second, third, tenth, eleventh, eighteenth, nineteenth, twentieth, and twenty-first claims, all discussed above.  As to the first three, reasonable jurists could see a sufficient similarity, in terms of effect, between what happened in *Riggins* and what happened here, and the issue is interesting enough that Basso should be encouraged to carry it further.  Regarding the ineffectiveness claim and the related denial-of-funding claim, reasonable jurists – namely the Supreme Court in *Wiggins*  and the Fifth Circuit in *Walbey* – already have disagreed with this Court's perspective.  The refused definition is a point on which reasonable jurists could disagree, the better view being that when a presumption is refuted an opposite rule likely should apply.  The last three issues take on some particular urgency in this cause because, as discussed in the eighteenth claim, there must have been at least one juror who had some serious doubts about the State's proof.

Additionally, this Court should grant a certificate of appealability on the application of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), as discussed in the fifteenth claim.  Basso was one of the first Texas litigants to raise this claim and deserves to see the issue through to the federal appellate courts.  Present Fifth Circuit case law is against Basso, but the reasons why that case law is incorrect are discussed at length in the memorandum and the reply to the motion for

summary judgment.  Basso deserves a chance to proceed farther because she was a

pioneer on the issue.

## CONCLUSION

Wherefore Basso prays that a new trial be granted or, alternatively, that a

certificate of appealability be granted.

Respectfully submitted,


/s/_____
Winston E. Cochran, Jr.
Attorney at Law
Texas Bar No. 04457300
SD Texas No. 14490
P.O. Box 38465
Houston, TX 77238-8465
Tel. (713) 228-0264
Fax (281)894-2705
Counsel for Petitioner

## CERTIFICATE OF SERVICE

I certify that a copy of this motion was electronically delivered to counsel for

the respondent at the following address on this the 9th day of February, 2009:

Attorney General of the State of Texas
Postconviction Litigation Division
Attn: Tina J. Dettmer Miranda
P.O. Box 12548
Austin, TX 78711

/s/_____
Winston E. Cochran, Jr.
Counsel for Petitioner

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **SUZANNE MARGARET BASSO,** | § | |
| **Petitioner** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. H-07-3047** |
| | § | |
| **NATHANIEL QUARTERMAN,** | § | **DEATH PENALTY CASE** |
| **Director, Texas Department of** | § | |
| **Criminal Justice, Correctional** | § | |
| **Institutions Division, Respondent** | § | |

## ORDER ON PETITIONER'S MOTION FOR NEW TRIAL AND
## MOTION FOR CERTIFICATE OF APPEALABILITY

The Petitioner's Motion for New Trial is:

GRANTED / DENIED.

The request for a Certificate of Appealability is:

GRANTED as to Claims _____;

DENIED.

SO ORDERED on this the _____ day of _____, 2009.


_____
Judge Presiding
United States District Court
Southern District of Texas